FILED

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

2018 OCT 30 PM 2:35

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| MICHAEL C. WORSHAM <br> 1916 Cosner Road <br> Forest Hill, Maryland 21050-2210 <br><br> *Plaintiff* <br><br> v. <br><br> TSS CONSULTING GROUP, LLC <br> 8815 Conroy Windermere Road <br> #185 <br> Orlando, Florida 32835 <br><br> Serve On Registered Agent: <br> The Law Office of Vik Parti, P.A. <br> 7380 Sand Lake Road, Suite 500 <br> Orlando, Florida 32819 <br><br> and <br><br> MARCOS I. TAVERAS <br> 7302 Forestwood Court <br> Orlando, Florida 32835 <br><br> *Defendants* | Case #: 6:18-cv-1692-ORL-37-KRS |

## SECOND AMENDED COMPLAINT

The Plaintiff, Michael C. Worsham, sues the Defendants for federal and Maryland TCPA telemarketing violations including FTC violations, for their criminal and civil conspiracy to initiate and/or make at least 76 pre-recorded voice telemarketing solicitation calls, and 11 live or other solicitation calls, to Plaintiff's Verizon wireless telephone number that is on the National Do Not Call list registry, to advertise and solicit their credit card debt or financial services. Defendants' telemarketing included multiple pre-recorded voice solicitation messages to Worsham, failure to transmit caller ID name and number, failure to identify the individual caller and calling company, fake and/or no caller names, hanging up when a question is asked, and foul language.

1

## PARTIES, VENUE AND JURISDICTION

1. Plaintiff **Michael C. Worsham** is a U.S. citizen residing in Harford County, Maryland, and has been the subscriber to his Verizon cellular (wireless) telephone number 410-557-6192 at all times relevant to this suit, and this number has both been on the National Do Not Call (DNC) list since July 15, 2006, and is used by Worsham for his personal and residential uses.

2. Defendant **TSS CONSULTING GROUP, LLC** ("TSS") is a U.S. citizen and Florida for-profit corporation created on October 2, 2017, with an official mailing address located at The UPS Store, 8815 Conroy Windermere Road, #185, Orlando, FL 32835, and no known physical address. It's registered agent identified by the Florida Division of Corporations is The Law Office of Vik Parti, P.A., 7380 Sand Lake Road, Suite 500, Orlando, Florida 32819.

3. Defendant **MARCOS I. TAVERAS** ("Taveras") is a U.S. citizen and the Manager and only officially identified officer of TSS, and lives at 7302 Forestwood Court, Orlando, Florida 32835. Taveras is also the President of First Capital Financial Group, LLC, a Florida corporation created on January 27, 2017 whose principal address is also 7302 Forestwood Court, Orlando, Florida 32835, and whose Registered Agent is also The Law Office of Vik Parti, P.A. Taveras is also the Manager and only officially identified officer of Mith Ventures, LLC, a Florida corporation created on October 2, 2017, with an official mailing address also located at The UPS Store, 8815 Conroy Windermere Road, #185, Orlando, FL 32835, and whose Registered Agent is also The Law Office of Vik Parti, P.A.

4. Jurisdiction in this Court is pursuant to 47 U.S.C. § 227. Venue is pursuant to 28 U.S.C. § 1391(b)(1), because both Defendants are resident of the State in which this district is located.

## ALLEGATIONS
### Defendants' prerecorded voice message solicitation calls

5. Defendants, in concert with themselves and through the mutual assistance of other persons and entities, are engaging in a wide-ranging and criminal and civil conspiracy to call consumers, including at phone numbers that are on the National Do Not Call (DNC) list Registry, using an automatic telephone dialing system (ATDS), to initiate and deliver artificial or prerecorded voice call messages for the purpose of encouraging people to buy interest reduction or financial services.

6. Defendants initiate calls and deliver prerecorded messages, but will generally not deliver messages if they reach the voice mail of the recipient, including Plaintiff.

7. Defendants transmit fake or spoofed Caller ID numbers and name information in the calls which deliver their prerecorded messages.

8. Defendants' calls all transmitted the same caller ID number of 410-557-7890, which is a non-working or non-assigned number, for which Defendants may receive DIP fees.

9. Defendants prerecorded voice message calls all were made in an unidentified female voice that spoke clear English with no discernable accent.

10. Defendants' first 2 telemarketing calls to Worsham both made on March 28, 2018 had different prerecorded voice messages than the same message delivered in the other 74 calls, all of which delivered the same prerecorded voice message.

### Defendants' 3 different prerecorded voice messages (aka robocalls)

11. **Call 1**: Defendants' first prerecorded voice message to Worsham on Mar. 28, 2018 said:

   *"Are you struggling with credit card debt? Then you need to be aware that the new laws going into effect in October favor the credit card companies, and make it much tougher on consumers. And to make matters worse, the major banks have just doubled your minimum payment requirements. But there is something you can do about it. The good news is that you're now eligible to lower your interest rates on all your major credit cards, which will save you thousands of dollars a year. To qualify you need at least $2,500 in debt, and have at least one account in good standing. But you must act now before your eligibility expires. Please consider this your final notice. Press 1 to lower your interest rate. To lower your interest rate press 1 now."*

12. **Call 2**: Defendants' 2nd prerecorded voice message to Worsham on Mar. 28, 2018 said:

   *"Are you struggling with high interest rates and want to get rid of bank charges? Then this is the best time to get a 0% on all your credit cards, till the life of your debt. Yes I said 0% till the life of your debt. Do not hesitate. You've already wasted a lot of money in interest and bank charges. This call will be life changing now. Please press 1 now, so our account specialists can activate your 0%. Thank you."*

13. **Calls 3 to 76**: After their first two calls on March 28, 2018, Defendants' other calls to Worsham delivered this same prerecorded voice message (unless the call was a missed call because Worsham did not answer and the Defendants left no message at all):

   *"This is not a solicitation call. Hi! This is the credit card holder award center from Visa Mastercard. We have been monitoring your credit card accounts for the last 6 months. Congratulations! On your excellent payment history, you now qualify for a 0% interest rates on all your credit card accounts. If you have completed this process or not interested, press 3 now. Otherwise press 1 now to speak to our qualification department, and complete the process. The qualification process can be completed in a few minutes."*

14. In addition to 76 prerecorded voice message solicitation calls from a Caller ID of 410-557-7890, Defendants also called Worsham's same cell phone number at least 11 times from Caller IDs of 2018, 888-778-5736, and 2002. Defendants' 76 prerecorded voice message calls to Plaintiff Worsham's Verizon wireless number 410-557-6192 from a Caller ID of 410-557-7890, and 11 live or other calls from three other Caller IDs, were made on the dates and times in the detailed list attached to the Complaint as Exhibits 1 and 2, respectively, and are summarized below:

3

| Call # | Date of Call | Time of Call | Number called | Call Length | Number on Caller ID |
|---|---|---|---|---|---|
| 1. | Mar. 28, 2018 | 11:31 AM | 410-557-6192 | 0 min 50 sec | 410-557-7890 |
| 2. | Mar. 28, 2018 | 3:54 PM | 410-557-6192 | 0 min 45 sec | 410-557-7890 |
| 3. | April 20, 2018 | 11:55 AM | 410-557-6192 | 0 min 59 sec | 410-557-7890 |
| 4. | April 25, 2018 | 5:49 PM | 410-557-6192 | missed call | 410-557-7890 |
| 5. | May 3, 2018 | 2:58 PM | 410-557-6192 | 0 min 38 sec | 410-557-7890 |
| 6. | May 9, 2018 | 4:17 PM | 410-557-6192 | 0 min 37 sec | 410-557-7890 |
| 7. | May 14, 2018 | 3:37 PM | 410-557-6192 | 2 min 46 sec | 410-557-7890 |
| 8. | May 21, 2018 | 1:27 PM | 410-557-6192 | 2 min 0 sec | 410-557-7890 |
| 9. | May 23, 2018 | 2:54 PM | 410-557-6192 | 25 min 6 sec | 410-557-7890 |
| 10. | May 25, 2018 | 1:03 PM | 410-557-6192 | 0 min 37 sec | 410-557-7890 |
| 11. | May 26, 2018 | 1:39 PM | 410-557-6192 | missed call | 410-557-7890 |
| 12. | May 26, 2018 | 4:39 PM | 410-557-6192 | 0 min 37 sec | 410-557-7890 |
| 13. | May 29, 2018 | 4:05 PM | 410-557-6192 | 0 min 44 sec | 410-557-7890 |
| 14. | May 30, 2018 | 1:29 PM | 410-557-6192 | missed call | 410-557-7890 |
| 15. | June 4, 2018 | 2:00 PM | 410-557-6192 | missed call | 410-557-7890 |
| 16. | June 5, 2018 | 3:07 PM | 410-557-6192 | 0 min 59 sec | 410-557-7890 |
| 17. | June 7, 2018 | 12:17 PM | 410-557-6192 | 37 min 1 sec | 410-557-7890 |
| 18. | June 9, 2018 | 4:46 PM | 410-557-6192 | missed call | 410-557-7890 |
| 19. | June 12, 2018 | 3:48 PM | 410-557-6192 | 0 min 34 sec | 410-557-7890 |
| 20. | June 13, 2018 | 1:45 PM | 410-557-6192 | 1 min 44 sec | 410-557-7890 |
| 21. | June 18, 2018 | 3:35 PM | 410-557-6192 | 0 min 44 sec | 410-557-7890 |
| 22. | June 18, 2018 | 3:59 PM | 410-557-6192 | 2 min 25 sec | 410-557-7890 |
| 23. | June 20, 2018 | 3:58 PM | 410-557-6192 | missed call | 410-557-7890 |
| 24. | June 20, 2018 | 6:30 PM | 410-557-6192 | 1 min 0 sec | 410-557-7890 |
| 25. | June 22, 2018 | 10:31 AM | 410-557-6192 | 0 min 26 sec | 410-557-7890 |
| 26. | June 22, 2018 | 1:09 PM | 410-557-6192 | 2 min 4 sec | 410-557-7890 |
| 27. | June 22, 2018 | 2:49 PM | 410-557-6192 | 0 min 59 sec | 410-557-7890 |
| 28. | June 25, 2018 | 12:49 PM | 410-557-6192 | missed call | 410-557-7890 |
| 29. | June 25, 2018 | 4:39 PM | 410-557-6192 | 1 min 6 sec | 410-557-7890 |
| 30. | June 26, 2018 | 11:42 AM | 410-557-6192 | 2 min 31 sec | 410-557-7890 |
| 31. | June 26, 2018 | 12:18 PM | 410-557-6192 | 1 min 8 sec | 410-557-7890 |
| 32. | July 2, 2018 | 4:54 PM | 410-557-6192 | 1 min 6 sec | 410-557-7890 |
| 33. | July 3, 2018 | 6:18 PM | 410-557-6192 | 1 min 21 sec | 410-557-7890 |
| 34. | July 5, 2018 | 10:27 AM | 410-557-6192 | 1 min 59 sec | 410-557-7890 |
| 35. | July 5, 2018 | 2:57 PM | 410-557-6192 | missed call | 410-557-7890 |
| 36. | July 5, 2018 | 5:25 PM | 410-557-6192 | 2 min 54 sec | 410-557-7890 |
| 37. | July 6, 2018 | 11:22 AM | 410-557-6192 | 2 min 54 sec | 410-557-7890 |
| 38. | July 10, 2018 | 2:42 PM | 410-557-6192 | 1 min 12 sec | 410-557-7890 |
| 39. | July 11, 2018 | 10:42 PM | 410-557-6192 | 0 min 36 sec | 410-557-7890 |
| 40. | July 12, 2018 | 6:07 PM | 410-557-6192 | 0 min 40 sec | 410-557-7890 |
| 41. | July 13, 2018 | 11:30 PM | 410-557-6192 | 1 min 17 sec | 410-557-7890 |
| 42. | July 16, 2018 | 11:22 AM | 410-557-6192 | 2 min 33 sec | 410-557-7890 |
| 43. | July 18, 2018 | 10:36 AM | 410-557-6192 | 1 min 36 sec | 410-557-7890 |
| 44. | July 19, 2018 | 11:01 AM | 410-557-6192 | 4 min 53 sec | 410-557-7890 |
| 45. | July 19, 2018 | 11:39 AM | 410-557-6192 | 1 min 3 sec | 410-557-7890 |
| 46. | July 19, 2018 | 3:40 PM | 410-557-6192 | 2 min 27 sec | 410-557-7890 |
| 47. | July 19, 2018 | 6:21 PM | 410-557-6192 | 1 min 16 sec | 410-557-7890 |
| 48. | July 23, 2018 | 11:22 AM | 410-557-6192 | missed call | 410-557-7890 |
| 49. | July 25, 2018 | 3:05 PM | 410-557-6192 | 0 min 58 sec | 410-557-7890 |
| 50. | July 27, 2018 | 10:59 AM | 410-557-6192 | missed call | 410-557-7890 |

76 prerecorded voice calls to Michael Worsham's cell number 410-557-6192 (*continued*):

| Call # | Date of Call | Time of Call | Number called | Call Length | Number on Caller ID |
|---|---|---|---|---|---|
| 51. | July 27, 2018 | 12:34 PM | 410-557-6192 | 3 min 47 sec | 410-557-7890 |
| 52. | July 30, 2018 | 3:07 PM | 410-557-6192 | missed call | 410-557-7890 |
| 53. | July 30, 2018 | 4:31 PM | 410-557-6192 | missed call | 410-557-7890 |
| 54. | July 31, 2018 | 5:24 PM | 410-557-6192 | 0 min 43 sec | 410-557-7890 |
| 55. | July 31, 2018 | 6:45 PM | 410-557-6192 | 2 min 10 sec | 410-557-7890 |
| 56. | Aug. 1, 2018 | 12:08 PM | 410-557-6192 | 1 min 41 sec | 410-557-7890 |
| 57. | Aug. 1, 2018 | 4:15 PM | 410-557-6192 | 1 min 1 sec | 410-557-7890 |
| 58. | Aug. 1, 2018 | 5:43 PM | 410-557-6192 | 1 min 1 sec | 410-557-7890 |
| 59. | Aug. 2, 2018 | 11:24 AM | 410-557-6192 | 1 min 33 sec | 410-557-7890 |
| 60. | Aug. 3, 2018 | 12:11 PM | 410-557-6192 | 2 min 3 sec | 410-557-7890 |
| 61. | Aug. 3, 2018 | 5:05 PM | 410-557-6192 | 1 min 14 sec | 410-557-7890 |
| 62. | Aug. 16, 2018 | 3:58 PM | 410-557-6192 | 1 min 18 sec | 410-557-7890 |
| 63. | Aug. 16, 2018 | 5:36 PM | 410-557-6192 | 1 min 22 sec | 410-557-7890 |
| 64. | Aug. 27, 2018 | 12:36 PM | 410-557-6192 | missed call | 410-557-7890 |
| 65. | Aug. 28, 2018 | 11:05 AM | 410-557-6192 | missed call | 410-557-7890 |
| 66. | Aug. 28, 2018 | 3:58 PM | 410-557-6192 | 0 min 58 sec | 410-557-7890 |
| 67. | Aug. 29, 2018 | 2:58 PM | 410-557-6192 | 0 min 53 sec | 410-557-7890 |
| 68. | Sep. 4, 2018 | 6:38 PM | 410-557-6192 | 1 min 12 sec | 410-557-7890 |
| 69. | Sep. 5, 2018 | 4:18 PM | 410-557-6192 | missed call | 410-557-7890 |
| 70. | Sep. 6, 2018 | 10:13 PM | 410-557-6192 | 1 min 28 sec | 410-557-7890 |
| 71. | Sep. 5, 2018 | 4:51 PM | 410-557-6192 | missed call | 410-557-7890 |
| 72. | Sep. 17, 2018 | 10:32 AM | 410-557-6192 | 3 min 22 sec | 410-557-7890 |
| 73. | Sep. 18, 2018 | 12:02 PM | 410-557-6192 | 2 min 48 sec | 410-557-7890 |
| 74. | Sep. 18, 2018 | 12:46 PM | 410-557-6192 | 1 min 30 sec | 410-557-7890 |
| 75. | Sep. 19, 2018 | 5:47 PM | 410-557-6192 | missed call | 410-557-7890 |
| 76. | Sep. 27, 2018 | 2:42 PM | 410-557-6192 | 0 min 51 sec | 410-557-7890 |

**11 live and other calls from May-Aug. 2018 to Michael Worsham's cell number 410-557-7890**

| Call # | Date of Call | Time of Call | Number called | Call length | Number on Caller ID |
|---|---|---|---|---|---|
| 1. | May 23, 2018 | 3:24 PM | 410-557-6192 | 2 min 40 sec | 2018 |
| 2. | June 7, 2018 | 1:31 PM | 410-557-6192 | missed call | 888-778-5736 |
| 3. | June 7, 2018 | 1:37 PM | 410-557-6192 | missed call | 888-778-5736 |
| 4. | June 28, 2018 | 10:33 AM | 410-557-6192 | 2 min 31 sec | 888-778-5736 |
| 5. | June 29, 2018 | 10:34 AM | 410-557-6192 | missed call | 888-778-5736 |
| 6. | June 29, 2018 | 10:35 AM | 410-557-6192 | missed call | 888-778-5736 |
| 7. | July 2, 2018 | 3:11 PM | 410-557-6192 | missed call | 888-778-5736 |
| 8. | July 2, 2018 | 3:12 PM | 410-557-6192 | missed call | 888-778-5736 |
| 9. | Aug. 20, 2018 | 5:15 PM | 410-557-6192 | missed call | 2002 |
| 10. | Aug. 20, 2018 | 5:24 PM | 410-557-6192 | missed call | 2002 |
| 11. | Aug. 20, 2018 | 5:29 PM | 410-557-6192 | missed call | 2002 |

15. Defendants' prerecorded voice solicitation messages never identified the company, or the individual caller, or any phone number or address of anyone.

16. If and when Worsham pressed 1 at the end of Defendants' prerecorded voice message calls to try to identify the caller or to make a do not call request, he would usually be transferred to a live male sales agent with and Indian-sounding accent ("Indian guy") who usually answered "Card Member Services," "Card Services," or "Account Services."

17. After pressing 1 during some calls, Worsham would then hear prerecorded messages with variations of a message asking him to hold for an agent, and in some cases the call would disconnect, and a few times he heard a message stating that a message could not be left.

18. If and when Worsham pressed 3 at the end of Defendants' prerecorded voice message calls to try to stop the calls and messages, the call would immediately disconnect, but the calls and messages did not stop coming.

19. Any prerecorded voice messages that Worsham heard while on hold did not identify themselves or the company calling, or provide a phone number or address.

20. Plaintiff received these calls and prerecorded voice solicitation messages without giving his express permission or consent to any Defendants, and/or persons and companies they conspired with to call Plaintiff's Verizon cell number 410-557-6192.

21. Defendants intentionally cause the numbers "2018" and "2002" to appear on Caller ID.

22. Worsham was harmed by Defendants calls and illegal conduct, including having to: (1) answer dozens of calls, (2) listen to the same robocall voice message over and over, (3) listen to the same solicitation scripts or evasive words by sales persons, (4) make repeated opt out and do not call requests that were ignored, (5) risk providing his most personal information to unidentified persons employed in Defendants' illegal operation in order to get through to a person who would identify the company that was responsible, (6) worry about what Defendants will do with Worsham's information, (7) spend time canceling the card or account Defendants opened and any transfer they initiated and dealing with follow up emails, and (8) spend time researching Defendants to try to figure them out, and (9) suffer other damages.

### Possible additional calls from Defendants

23. Plaintiff may have also received additional calls on other dates, including to Plaintiff's other phone number, from Defendants or their agents, partners or contractors as part of Defendants' telemarketing practices and conspiracy over which Defendants exercise control, using different numbers, Caller IDs and prerecorded messages, but can not be certain, because Defendants hide their calls and avoid contact by call recipients like Plaintiff, by bypassing or delivering faked or spoofed Caller ID, giving no name of the individual callers in its prerecorded messages, failing to identify themselves in messages, using deceptive

names, failing to include in the messages an address or website that identify Defendants, and by using different numbers to avoid detection, by hanging up on Plaintiff and other consumers, and because Defendants may be operating in whole or in part outside the United States (possibly in India) and/or through other persons or entities.

### Allegations About TSS and Taveras

24. On information and believe Plaintiff alleges that Defendants may have called or solicited Plaintiff from a location outside the US despite the TSS being registered in Florida and despite Caller ID appearing as if it was a local call coming from 410-557-7890.

25. On information and believe Plaintiff alleges that Defendants use a service that spoofs the caller ID number transmitted during the calls to be the same area code as that of the recipient, a variation of a service called "Caller ID mirroring" or "neighbor spoofing."

26. Defendants have not registered to do business using the names "Card Member Services," "Card Services," or "Account Services" with any state agency.

27. Taveras runs First Capital Financial Group ("First Capital"), LLC and Mith Ventures, LLC and may use them in concert with TSS to move funds around, represent themselves to others, or to obscure and hide the overall operation.

28. Taveras made all the relevant decisions and policy for TSS, First Capital, and Mith Ventures related to telemarketing, including those leading to or causing the violations alleged herein.

29. TSS and Taveras were fully aware of the telemarketing practices that any other persons or businesses used to generate leads and customers for their business operation.

30. TSS and Taveras had an agency relationship with each other and any others used for their business operation.

31. On information and belief Defendants business operation made millions of dollars making illegal calls like the calls made to Plaintiff, including calls with varying messages and caller IDs transmitted, and possibly including profits through Caller ID DIP fees.

32. Defendants continue generating leads through illegal and evasive telemarketing practices.

33. Defendants failed to provide their written do not call policy as Worsham requested.

34. Defendants instruct their employees to advertise or promise that they can get a person a 0% interest rate for the duration of their credit card, which is false, misleading and deceptive.

35. Defendants charge greatly inflated prices, in part because of their misleading 0% interest promise, because for example, a person can typically transfer a balance of $5,000 credit balance for the industry standard 3% transfer fee, or $150, while Defendants will ask for many times this amount, typically stating that their fee is $795, $895, $995 or $1,295.

36. Defendants do not state the price of their 'service' initially, because people may hang up, and because they base their fee in part on the amount of debt that the consumer or call recipient owes as a balance on their credit card.

37. The phone representatives who Worsham spoke to, who have Indian sounding accents, know that their own conduct in failing to identify themselves or the company, failing to honor do not call requests, failing to provide a phone number, hanging up, and other misrepresentations or evasions, are improper and illegal, and they are jointly liable with the named Defendants for those Counts which apply to their specific misconduct, but Worsham does not yet know their identities in order to name them.

38. Defendants and their employees, and all their agents, all know they are calling in to the U.S.

### Additional Allegations

39. Defendant's calls were initiated to deliver a prerecorded voice solicitation message.

40. Defendants are not identified during any part of any of the prerecorded voice messages.

41. Defendants did not identify themselves in any live calls as required, and only if and after Plaintiff affirmatively had to ask them for their name.

42. Defendants exercised decision-making control over their respective policies and procedures, including regarding telemarketing, and made the decisions causing the violations alleged.

43. Defendants intentionally conspired to run a business operation that:

(1) called Plaintiff and many other numbers despite them being on the national DNC registry,
(2) used pre-recorded voice messages,
(3) did not identify anyone in the prerecorded messages,
(4) called so inaccurate or incomplete Caller ID is transmitted,
(5) does not or avoids delivering messages or identification on the call recipient's voice mail,
(6) did not identify the caller in the prerecorded messages,
(7) did not identify themselves in any way during additional prerecorded messages that Worsham had to listen to while on hold just to try to get to a live human being to find out who called him, *inter alia*, in order to dissuade the call recipient from complaining about the illegal nature of the prerecorded messages, and to avoid federal or state government enforcement actions,
(8) instructed employees not to identify any company name or the real name of the employee, and to hang up if asked questions,
(9) to provide false, misleading and deceptive information about the services provided and who the company is and their relationship with financial, credit, or credit reporting companies, and false assertions that they have been monitoring consumer's credit accounts.

44. The purpose of Defendants' telemarketing and of the calls and messages is to encourage purchase or rental of, or investment in, property, goods, or services offered by Defendants.

45. Defendants' prerecorded calls all failed to transmit or include the actual name of the caller.

46. Defendants' calls failed to transmit Defendant's phone number and name to or on Caller ID.

47. The name of the telemarketer is available for Caller ID transmission by both Plaintiffs' and Defendants' carriers (including any contractors or agents or carriers used by Defendants).

48. In Oct. 2016 Worsham sent a FOIA request to the FCC, and on January 4, 2017 the FCC sent Worsham a letter stating *"The second part of your letter seeks a list of all carriers identified by the FCC who are not capable of transmitting the name of the telemarketer as part of Caller ID transmission. We conducted a search and did not locate any responsive records."*

49. Plaintiffs' Caller ID equipment can and regularly does transmit the name of the caller, and both his and the Defendants' carriers are capable of transmitting the name of the caller.

50. Plaintiff has no business relationship with and did not gave any prior permission or consent to be called or solicited by Defendants or their affiliates, partners, agents, or contractors.

51. Defendants' calls to Plaintiff could not have been possible without Defendants' conspiracy with and aiding and abetting each other and/or persons or entities with whom Defendants conspired to call Plaintiff, including one or more of the person(s) or entities who provided the following or possibly other services:

   (1) voices in the prerecorded voice messages, (2) script for the prerecorded voice messages, (3) list of phone numbers to be called including Plaintiff's number, (4) equipment to dial numbers and deliver the prerecorded voice messages to Plaintiff, (5) Caller ID spoofing or masking services or programs, (6) advice on telephone solicitations and creating and delivering prerecorded messages, including avoiding legal liability.

### Automatic Dialing and TCPA Allegations

52. Defendants' calls and messages were all initiated and made with an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

53. Defendants' telephone calls to Plaintiff violated the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b), and the FCC's regulations promulgated pursuant to the TCPA located at 47 C.F.R. § 64.1200.

54. Defendants' telephone calls to Plaintiff violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6601-6108, as implemented by the Federal Trade Commission (FTC) in the Telemarketing Sales Rule,16 C.F.R. Part 310.

55. Defendants made and assisted substantially to the initiation of telephone solicitations to the Plaintiff in violation of the TCPA and FCC regulations, on, but possibly not limited to, the dates listed in this Complaint.

56. Defendants intentionally, personally and substantially participated to help arrange for the solicitation calls to be initiated and ultimately delivered to Plaintiff's phone number.

57. Defendants made more than one call within a one year period to Plaintiff in violation of the TCPA and the FCC and FTC regulations.

58. FCC regulations 47 C.F.R. § 64.1200(d)(4) and 47 C.F.R. § 64.1601(e) were promulgated pursuant to U.S.C. § 227(b)(2).

59. Defendants are a *telemarketer* engaged in *telemarketing* as defined by the FCC and/or FTC.

60. Defendants all have a nondelegable duty and affirmative obligation to comply with the TCPA and TSR. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395-6 (1982).

### Willful and Knowing Conduct Allegations

61. Defendants conspired to call Plaintiff and many others in Maryland knowing that their calls would be calling into Maryland and throughout the U.S. including Florida.

62. Defendants through its conspiracy to call Plaintiff and others in Maryland had numerous, substantial and continuous contacts with Maryland during their calls.

63. Plaintiff's 410-557-6192 number has been on the national DNC list registry continuously since July 8, 2003 and prior to and at the time of all of Defendants' calls and/or messages.

64. Defendants willfully and knowingly ignore the national DNC list.

65. Defendants failed to pay the annual fee for access to telephone numbers within Plaintiff's area code 410 that are included on the national DNC list Registry maintained by the FTC.

66. Defendants were aware of their TCPA violations, including through complaints from consumers and call recipients, prior to any calls made to the Plaintiff.

67. One or more Defendants settled TCPA claims prior to calling Worsham.

68. Defendants are aware of, and know about and approve of, the telemarketing calling patterns and practices used in any of their calling centers and/or used by of their agents or contractors.

69. Defendants profited by and through the telemarketing calling patterns and practices they or their agents or contractors use, and through the conspiracy to call and as part of the calls.

10

70. Defendants ratified the acts and conduct of all persons involve in the calls, including but not limited to employees, agents or contractors calling on its behalf, including any used to call Plaintiff, and profited or benefitted by the ratification of these acts.

71. Defendants willfully and knowingly failed to clearly identify itself and the individual callers during the calls, and specifically did not provide the name of the individual callers, the names of themselves or any other persons on whose behalf the call was being made, and any website that identifies Defendants or allows a do not call request to be made by an interactive voice- and/or key press-activated opt-out mechanism or otherwise.

72. Defendants' violations were done '*willfully*' and '*knowingly*,' as the term '*willful*' is defined at 47 U.S.C. § 312(f) and 47 U.S.C. § 503(b), and as the term '*knowingly*' is defined in 47 U.S.C. § 223(b)(1), and as both of these terms are interpreted by the FCC.

73. Defendants may have also violated the Fair Credit Reporting Act in how they obtained and handled Worsham's personal or financial or credit information.

## COUNTS 1-5 : TELEPHONE CONSUMER PROTECTION ACT VIOLATIONS

Plaintiff incorporates the facts in ¶¶ 7-21 and ¶¶ 42-62 herein, and further alleges that:

### COUNT 1 : Calling a wireless number without prior express consent

74. Defendants' Calls violated the TCPA at 47 U.S.C. § 227(b)(1)(A)(iii), and a similar FCC regulation at 47 C.F.R. § 64.1200(a)(1)(iii), which provides that:

"*(1) Prohibitions: It shall be unlawful for any person . . .(A) to make any call (other than a call made for emergency purposed or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice - (iii) to any telephone number assigned to a paging service, cellular telephone service . . .*"

### COUNT 2 : Failure to honor the National Do Not Call (DNC) list Registry

75. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(c)(2), which prohibit telephone solicitations to a number registered on the National DNC registry.

11

## COUNT 3 : Failure to transmit full and complete Caller ID information

76. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1601(e)(I), which requires that *"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must transmit caller identification information . . .[and] must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer."* and also violates the FTC's similar provision at 16 C.F.R. § 310(a)(7).

## COUNT 4 : Failure to identify a telemarketer and their telephone number

77. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(d)(4), which require minimum procedures so that *"A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."*

78. Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to a subscriber without instituting procedures for identifying the individual caller, company name, and a contact telephone number or address, as required by 47 C.F.R. § 64.1200(d)(4).

## COUNT 5 : Failure to provide a written do not call policy upon demand

79. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(d)(1), which require minimum procedures so that *"A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."*

80. Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to a subscriber without instituting standard and procedures to have a written policy, available upon demand, for maintaining a do not call list, as required by 47 C.F.R. § 64.1200(d)(1).

## MARYLAND TELEPHONE CONSUMER PROTECTION ACT (MD-TCPA)

Plaintiff incorporates the facts alleged in ¶¶ 7-21 and ¶¶ 42-62 herein, and further alleges the following violations of the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-14-3202, which prohibits a person from violating the federal TCPA and/or the FCC and/or FTC telemarketing regulations, and which makes each prohibited telephone solicitation and each prohibited practice during a telephone solicitation a separate violation.

### COUNTS #6-13 : TCPA and FCC violations which also violate the Maryland TCPA

81.  **Count 6**: Defendants' violations in Count #1 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

82.  **Count 7:** Defendants' violations in Count #2 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

83.  **Count 8:** Defendants' violations in Count #3 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

84.  **Count 9:** Defendants' violations in Count #4 above also violates the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

85.  **Count 10:** Defendants' violations in Count #5 above also violates the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 11 : Failing to provide an automated interactive voice opt out mechanism

86.  **Count 11:** Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(3), which requires that *"All artificial or prerecorded voice telephone messages shall: . . .(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or [wireless numbers] . . . provide an automated, interactive voice-and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two*

13

*(2) seconds of providing the identification information required in paragraph (b)(1) of this section."* and also violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202, including because: (1) Defendants' separate failures to provide the required identification information precludes it from complying with this requirement for an automated, interactive voice- and/or key press-activated opt-out mechanism, and (2) any automated opt op out mechanism provided intentionally failed to worked or was ignored.

## COUNT 12: Failing to state clearly the identity of the business, individual or entity responsible

87. **Count 12:** Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(1), which require that:

    *"All artificial or prerecorded voice telephone messages shall: ...(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated".*

    and violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

## COUNT 13 : Failing to state clearly the telephone number of the business or individual

88. **Count 13:** Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(2), which requires that:

    *"All artificial or prerecorded voice telephone messages shall: ...(2) During or after the message, state clearly the telephone number (other than the that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. ... For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign."*

    and this FCC violation also constitutes a violation of the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

## COUNTS 14-22
### FTC Telemarketing Sales Rule (TSR) violations which also violate the Maryland TCPA

Plaintiff incorporates the facts in ¶¶ 7-21 and ¶¶ 42-62 herein, and further alleges that:

### COUNT 14 : False or misleading statements to induce a sale of goods or services

89. **Count 14:** Defendants' Calls violate 16 C.F.R. § 310.3(a)(4), the FTC regulation which makes it a deceptive act or practice and prohibits any seller or telemarketer from (4) "*Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution,*" and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 15 : Failing to transmit the telemarketer's number and name to Caller ID

90. **Count 15:** Defendants' Calls violate 16 C.F.R. § 310.4(a)(8), the FTC regulation which prohibits "(8) *Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call.*", which violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 16 : Interfering with the National Do Not Call List Registry

91. **Count 16:** Defendants' Calls and practices violate 16 C.F.R. § 310.4(b)(1)(ii), the FTC regulation which makes it an abusive telemarketing act or practice and TSR violation, and prohibits a seller or telemarketer from "*Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with 310.4(b)(1)(iii),*" and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 17 : Initiating a call to a telephone number on the do-not-call registry

92. **Count 17:** Defendants' Calls violate 16 C.F.R. § 310.4(b)(1)(iii)(B), the FTC regulation which prohibits initiation of "*any outbound telephone call to a person when . . . (B) That person's telephone number is on the "do-not-call" registry,*" and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

15

### COUNT 18 : Initiating a call that delivers a prerecorded message

93. **Count 18:** Defendants' Calls violate 16 C.F.R. § 310.4(b)(1)(v), the FTC regulation which defines as an abusive act or practice and prohibits *"(v) Initiating any outbound telephone call that delivers a prerecorded message,"* and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 19 : Failing to disclose truthfully, promptly and clearly the seller's identity

94. **Count 19:** Defendants' Calls violate 16 C.F.R. § 310.4(d)(1), the FTC regulation which requires that a telemarketer *"disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . . . (1) The identity of the seller; (2) That the purpose of the call is to sell goods or services; (3) The nature of the goods or services."* which also violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 20: Initiating calls without having paid the annual fee for the Do Not Call Registry

95. **Count 20:** Defendants' Calls violates 16 C.F.R. § 310.8(a), the FTC regulation which makes it a violation of the TSR for *"any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly, or through another person, first has paid the annual fee, required by § 310.8(a), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission,"* which violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 21 : Failing to keep required records

96. **Count 21:** Defendants violated 16 C.F.R. § 310.5(a), the FTC regulation requiring that *"(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced . . . (1) all substantially different advertising, brochures, telemarketing scripts, and promotional materials; . . . (3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services; (4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations;"* and this violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 22 : Misrepresenting a material aspect of the goods or services

97. **Count 22:** Defendants violated 16 C.F.R. § 310.3(a)(2)(iii), the FTC regulation providing that it is a deceptive telemarketing act or practice and an TSR violation for any seller or telemarketer to engage in *"(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information: . . . (iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer."* and this conduct violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### REQUESTED RELIEF

98. Each failure on a separate occasion by a Defendant or its conspiring partners, employees, agents and/or contractors to comply with the TCPA or FCC or FTC regulations constitutes a separate violation of the federal TCPA, Maryland TCPA, and FTC regulations.

### Federal TCPA Damages

Plaintiff seeks statutory damages for the 76 prerecorded voice message calls ("robocalls"), and for all 87 robocalls and live or other solicitation calls ("total calls"), as detailed below.

99. The TCPA, 47 U.S.C. §§ 227(b)(3) and (c)(5) provides an explicit private right of action for $500 in statutory damages for each violation of the TCPA or an FCC regulation issued under the TCPA pursuant to 47 U.S.C. § 227(b).

100. The TCPA, 47 U.S.C. §§ 227(b)(3) and(c)(5) explicitly provide for up to triple damages if a Defendant willfully or knowingly violates the TCPA or the FCC regulations.

101. **Count 1**: Plaintiff demands $1,500 for each separate violation of the TCPA and/or the FCC's regulations, including triple damages for each willful or knowing violation of the TCPA or FCC regulations, which for the 76 robocalls alleged so far in Count 1 is: 76 x $1,500 = **$114,000 in federal TCPA statutory damages.**

102. **Counts 2 to 4**: Plaintiff demands $1,500 for each separate violation of the TCPA and/or the FCC's regulations, including triple damages for each willful or knowing violation of the TCPA or FCC regulations, which is $1,500 in TCPA statutory damages for each violation in each Count, and for each call in each Count, which for the 87 total calls alleged so far in Counts 2 to 4 is: $1,500 x 87 x 3 = **$391,500 in federal TCPA statutory damages.**

103. **Count 5**: Plaintiff demands $1,500 for each separate violation of the TCPA and/or the FCC's regulations including triple damages for each willful or knowing violation of the TCPA or FCC regulations, which is $1,500 in TCPA statutory damages for each of the 3 violations in this Count for the violations in Calls 41, 47, and 49, when Defendants failed to provide a written do not call policy upon demand, which for these 3 calls alleged in Count 5 is: $1,500 x 3 = **$4,500 in federal TCPA statutory damages.**

104. **Total Federal TCPA statutory damages = $114,000 + $391,500 + $ 4,500 = $ 510,000**

### TCPA Injunctive Relief

105. The TCPA, 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5(A) provide for injunctive relief to enjoin violations of the FCC's regulations prescribed under the TCPA.

106. Plaintiff requests injunctive relief prohibiting Defendants and all persons they control from calling Plaintiff and any person in the U.S. in violation of the TCPA or FTC TSR.

### Maryland TCPA Damages

107. **Counts 6 to 22**: For each call identified so far, Plaintiff demands $500 for each separate violation of the Maryland TCPA in Counts 6 to 22, pursuant to Maryland Commercial Law Art. § 14-3202(b)(2), and reasonable attorneys fees as may become applicable.

108. Plaintiff seeks the following Maryland TCPA statutory damages for Counts 6-22:

| | | |
|---|---|---|
| **Count 6:** | 76 calls = 76 Maryland TCPA violation x $500/violation | = $ **38,000** |
| **Count 7:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 8:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 9:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 10:** | 3 calls = 3 Maryland TCPA violation x $500/violation | = $ **1,500** |
| **Count 11:** | 76 calls = 76 Maryland TCPA violation x $500/violation | = $ **38,000** |
| **Count 12:** | 76 calls = 76 Maryland TCPA violation x $500/violation | = $ **38,000** |
| **Count 13:** | 76 calls = 76 Maryland TCPA violation x $500/violation | = $ **38,000** |
| **FTC-related Maryland TCPA violations:** | | |
| **Count 14:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 15:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 16:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 17:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 18:** | 76 calls = 76 Maryland TCPA violation x $500/violation | = $ **38,000** |
| **Count 19:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 20:** | 87 calls = 87 Maryland TCPA violation x $500/violation | = $ **43,500** |
| **Count 21:** | Records failure = 1 MD TCPA violation x $500/violation | = $ **500** |
| **Count 22:** | Misrepresenting = 1 MD TCPA violation x $500/violation | = $ **500** |
| **Total Maryland TCPA statutory damages** | | = **$584,000** |

109. Defendants' ongoing illegal calls are also criminal violations of both the federal Truth in Caller ID Act, codified at 47 U.S.C. § 227(e)(5)(B) (providing for criminal fines for violations), and the Maryland Public Utility Companies (PUC) Article § 8-204(b) and (d) (making violations a misdemeanor and subject to fines for using "an automated dialing, push-button, or tone-activated address signaling system with a prerecorded voice to . . . solicit persons to purchase, lease, or rent goods or services"), and possibly Florida and other State civil and criminal laws, and Plaintiff requests that the Court refer this matter and/or the Defendants to the appropriate agencies for investigation.

WHEREFORE the Plaintiff seeks jointly and severally from the Defendants TSS Consulting Group, LLC and Marcos I. Taveras, **$510,000** in federal TCPA statutory damages, and **$584,000** in Maryland TCPA statutory damages, for a **Grand Total of $1,094,000** in statutory damages sought for the violations identified thus far, an injunction prohibiting the Defendants or any persons under their control from calling or assisting with calling any persons in the U.S. in violation of the TCPA or FCC regulations or the FTC Telemarketing Sales Rule, reasonable attorneys fees as may become applicable, costs, and other such relief as is just and necessary.

### JURY TRIAL DEMAND

The Plaintiff requests a trial by jury for all matters triable by a jury.

Respectfully submitted,

*/s/ Michael C. Worsham/*

Michael C. Worsham, Plaintiff, *Pro Se*
1916 Cosner Road
Forest Hill, Maryland 21050
410-692-2749
michael @ magicmichael.net

October 29, 2018