# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MICHAEL C. WORSHAM,

        Plaintiff,

v.                                        Case No:   6:18-cv-1692-LHP

TSS CONSULTING GROUP, LLC and
MARCOS I. TAVERAS,

        Defendants

_____

## ORDER AND ORDER TO SHOW CAUSE TO PLAINTIFF

This cause came on for consideration without oral argument on the following

motion filed herein:

> **MOTION:   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER RULE 56 (Doc. No. 221)**
>
> **FILED:      July 19, 2022**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

## I.      BACKGROUND

This action stems from unwanted calls Plaintiff Michael C. Worsham, a

former attorney proceeding *pro se*, alleges he received from Defendants TSS

Consulting Group, LLC ("TSS"), a now inactive limited liability company located

in Florida, and Marcos I. Taveras, the managing member of TSS.   Plaintiff resides in Forest Hill, Maryland, and has been the subscriber to the Verizon cellular wireless telephone number 410-557-6192 continuously since 2014.   Doc. No. 47, ¶ 1; Affidavit of Michael C. Worsham ("Worsham Aff.") (Doc. No. 221-1, ¶ 1).[1]   The number was originally Plaintiff's landline number, but he changed it to his cellular number in 2014.   Worsham Aff., ¶ 2.   The number has been registered with the National Do Not Call List continuously for at least the last 10 years.   *Id.*   Plaintiff never gave Defendants or anyone working for Defendants written or prior express permission to call Plaintiff at the 410-557-6192 number.   *Id.*, ¶ 3.

Between March 28, 2018 and September 18, 2018, Plaintiff received at the 410-557-6192 phone number 83 phone calls, all originating from a 410-557-7890 phone number.   *Id.*, ¶¶ 4-5; *see also* Doc. No. 47, ¶¶ 11-14.   And between May 23, 2018 and December 27, 2018, Plaintiff received an additional 12 phone calls, originating from the numbers 888-778-5736, 2018, 2002, and 800-847-2911.   Worsham Aff., ¶¶ 4-5; Doc. No. 47, at 5.   During 18 of these calls, Plaintiff attempted to opt out by telling the person on the call to stop calling his cellular number, but this had no effect and the calls continued at least through June 2019.   Worsham Aff., ¶¶ 5-12,

---

[1] The Affidavit, while unsworn, complies with the requirements of 28 U.S.C. § 1746(2).

16.   The majority of the calls were prerecorded voice solicitation messages, and never identified the company, the caller, or any phone number or address.   *Id.*, ¶¶ 8-14, 16, 21; Doc. No. 47, ¶¶ 13, 15, 19.   During two phone calls on June 7, 2018, Plaintiff spoke to two different salespersons, one of whom stated that the company was TSS Consulting Group, located in Windermere Florida.   Worsham Aff. ¶¶ 21-41.   And during two phone calls on June 3, 2019, the salesperson said that he worked with TSS.   *Id.*, ¶ 16.   During the first June 7, 2018 call, the person Plaintiff was speaking to provided a call back number of 407-986-5439, extension 2071.   *Id.*, ¶ 30.   On at least six occasions, Plaintiff asked the salesperson on the call for a copy of their Do Not Call policy, but it was never provided.   *Id.*, ¶ 20.

Based on these phone calls, Plaintiff initiated the present lawsuit.[2]   Doc. No. 1.   As relevant to the present motion, on April 2, 2019, Plaintiff filed a Third Amended Complaint against TSS and Taveras, alleging 22 violations of the Telephone Consumer Protection Act ("TCPA") and the Maryland Telephone Consumer Protection Act ("MD TCPA").   Doc. No. 47.   Plaintiff sought both statutory damages and injunctive relief.   *Id.*   The case was stayed from October 2, 2019 through May 24, 2021 due to the Defendants' filing of bankruptcy proceedings.

_____

[2] The procedural history of this case has been set forth in prior Orders, is well known to the parties, and will not be repeated in its entirety here.   *See, e.g.,* Doc. Nos. 210-211, 220.

Doc. Nos. 155-57, 162-66.   *See also* 11 U.S.C. § 362(a)(1).   On March 30, 2020, both bankruptcy proceedings were resolved.   *See in re TSS Consulting Group, LLC*, No. 6:19-bk-6322 (Bankr. M.D. Fla.); *In re Marcos Taveras*, No. 6:19-bk-6316 (Bankr. M.D. Fla.).   *See also* Docs. 160–61.[3]   As a result, the parties agreed that the only relief remaining that Plaintiff could pursue was statutory injunctive relief under the TCPA.   *See* Doc. No. 165.   Accordingly, the case was reopened so that Plaintiff could pursue injunctive relief under the federal statute only.   Doc. No. 166.[4] Pursuant to the Amended Case Management and Scheduling Order, discovery closed on November 30, 2021, and the deadline to file dispositive motions was January 31, 2022.   Doc. No. 190, at 3-4.

On December 23, 2021, Plaintiff filed a "Motion for Permanent Injunctive Relief," which appears to have been a first motion for summary judgment.   Doc. No. 198.   Defendants never responded to the motion.   Nor did Defendants timely respond to the Third Amended Complaint.   *See* Doc. No. 211.   So, on June 1, 2022, the Court issued an Order to Show Cause, and based on the parties' responses, the

_____

[3] While Defendants' counsel initially stated that the bankruptcy proceedings were filed under Chapter 11, it is clear that the proceedings were actually conducted under Chapter 7.   *See* Doc. Nos. 155-56; 160-61.

[4] When the case was reopened, the parties consented to the undersigned's jurisdiction, Doc. Nos. 180-83, and such consent remains in full force and effect as of the date of this Order.   *See* Doc. No. 210.

Court denied without prejudice Plaintiff's "Motion for Permanent Injunctive Relief," deemed Defendants' belated answers to the Third Amended Complaint to be timely filed, and set forth a briefing schedule for a renewed motion for summary judgment.   Doc. No. 220, at 6-7.   *See also* Doc. Nos. 211, 216-17.   With respect to Plaintiff's filing of a renewed summary judgment motion, the Court explicitly ordered that

> The motion must be all inclusive – in other words, Plaintiff shall make all necessary legal arguments, and attach all materials to that motion – that he wishes the Court to consider.   The Court will not consider any discovery materials, evidence, or arguments that are incorporated by reference (other than the Third Amended Complaint and Defendants' Answers thereto).   Plaintiff shall ensure that the renewed motion satisfies the requirements of Rule 56, contains citation to appropriate legal authority to support the requested relief, and addresses all elements of the claims and relief asserted in the Third Amended Complaint that Plaintiff is continuing to pursue against Defendants, including, but not limited to, establishing, via admissible evidence under the Federal Rules of Evidence, that Defendants owned or had control over the telephone number(s) at issue.

Doc. No. 220, at 7.

On July 19, 2022, Plaintiff filed his renewed motion for summary judgment. Doc. No. 221.   In direct contravention of the Court's June 28, 2022 Order, Plaintiff did not attach all materials to the motion that he wished the Court to consider, rather he continued to incorporate materials attached to his unsuccessful July 20, 2019 motion for preliminary injunction (Doc. No. 95), and materials attached to the first motion for summary judgment. (Doc. No. 198).   *See* Doc. No. 221, at 2-4.   The

only materials attached to the renewed motion consist of an updated affidavit from Plaintiff himself, and a copy of the Electronic Articles of Incorporation for TSS. Doc. Nos. 221-1, 221-2.   In addition, the renewed motion exceeds the 25-page limit without prior authorization.   *See* Doc. No. 32, at 9; Doc. No. 190, at 11.

Defendants filed a timely response in opposition, in which they contend that the requested injunctive relief is overly broad and exceeds the authority of the TCPA, and that Plaintiff has failed to establish that Defendants initiated the calls at issue.   Doc. No. 224.   With leave of Court, Plaintiff filed a timely reply, in which he again refers to the materials filed with the previously identified motions, and argues that the doctrine of nondelegation establishes Defendants' liability in this case.   Doc. No. 228.   With the motion fully briefed, and for the reasons discussed below, the motion is due to be denied, and Plaintiff shall be provided an opportunity to show cause why summary judgment should not instead be entered in favor of Defendants as to all claims.   *See* Fed. R. Civ. P. 56(f).

## II.      STANDARD OF REVIEW

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The movant "bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'"   *Cohen v.*

*United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994), *modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994)).   Once the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating an issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citation omitted). The non-movant must provide more than a "mere 'scintilla' of evidence" supporting its position, and "there must be enough of a showing that the jury could reasonably find for that party."   *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).   In this analysis, the Court is only required to consider the materials cited by the parties, but it may consider other materials in the record.   Fed. R. Civ. P. 56(c)(3).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"   *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248).   When analyzing a motion for summary judgment, a court draws all reasonable inferences from the evidence in the light most favorable to the non-movant and resolves all reasonable doubt in the non-movant's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1304 (11th Cir. 2002)).

Because the only issues remaining in this case involve claims for injunctive relief, there is no right to a jury trial.  *See Herstal SA v. Clyde Armony, Inc.*, 838 F.3d 1071, 1088 (11th Cir. 2016) ("[A] right to a jury trial does not exist for suits seeking only injunctive relief, which is purely equitable in nature." (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999); *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 450 F.3d 505, 517, n.25 (11th Cir. 2006)).  *See also Armco, Inc. v. Armco Burglar Alarm. Co.*, 693 F.2d 1155, 1158 (5th Cir. 1982) ("The right to trial by jury is determined by the issues, not by the pleadings.").  Accordingly, all of the issues in dispute must be resolved by the Court as the ultimate trier of fact. In such circumstances, it is the law of the Circuit that:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, . . . even if that conclusion is deemed "factual" or involves a "mixed question of fact and law."  A trial on the merits would reveal no additional data.  Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony.  The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978).[5]   *See also Bee's Auto,*

*Inc. v. City of Clermont*, 927 F. Supp. 2d 1318, 1327 (M.D. Fla. 2013).   Further, while

the Court interprets *pro se* filings liberally, *pro se* litigants are still "subject to the

relevant law and rules of court, including the Federal Rules of Civil Procedure."

*Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), *cert. denied*, 493 U.S. 863 (1989).

## III.   ANALYSIS

### A.   *Procedural Deficiencies with Plaintiff's Renewed Motion*

Plaintiff's motion is due to be denied for several reasons.   First, as noted

above, it exceeds the page limit without prior authorization.   Doc. No. 190, at 11.

Second, Plaintiff's motion states that he is seeking injunctive relief under both the

TCPA and the MD TCPA, yet the Third Amended Complaint only seeks injunctive

relief under the TCPA.   *Compare* Doc. No. 221, at 1, *with* Doc. No. 47, ¶¶ 105-06 &

p. 19.   The motion also contradicts Plaintiff's prior assertions to the Court in

relation to reopening the case following the conclusion of Defendants' bankruptcy

proceedings, in which Plaintiff stated he was only seeking injunctive relief under

the TCPA.   *See* Doc. Nos. 163, 165.   Third, the renewed motion for summary

judgment nowhere identifies which of the 22 claims for relief set forth in his Third

---

[5] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.   *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Amended Complaint form the legal basis for his requested injunctive relief – Plaintiff simply makes the request without tying it to any of his claims.   Doc. No. 221.   Fourth, the requested injunctive relief in the renewed motion far exceeds that identified in the Third Amended Complaint.   *See* Doc. No. 47, ¶¶ 105-06 & p. 19; Doc. No. 221, at 30-31.

But beyond these deficiencies, Plaintiff's renewed motion contains one more fatal flaw.   Plaintiff's motion flagrantly ignores the Court's June 28, 2022 Order and continues to incorporate materials attached to prior filings in this case.   Doc. No. 220, at 7.   That Order made clear the Court would not consider any discovery materials, evidence, or arguments that were incorporated by reference, beyond the Third Amended Complaint and Defendants' answers.   *Id.*   In his renewed motion, Plaintiff acknowledges the Court's directives, disagrees with them (without citation to any authority to support his position), and reiterates his intent to incorporate by reference previously filed materials.   Doc. No. 221, at 3-4.

Thus, pursuant to the June 28, 2022 Order, the only evidence before the Court on summary judgment is Plaintiff's own affidavit, and a copy of the Electronic Articles of Organization for Florida Limited Liability Company for TSS.   Doc. Nos. 221-1, 221-2.   While these two pieces of evidence are uncontroverted, as discussed below, they do not come close to establishing a prima facie case for any violations of the TCPA.

B.      *Substantive Deficiencies with Plaintiff's Renewed Motion*

The central purpose of the TCPA is to protect consumers against "the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional findings)) (alteration in original).   To that end, the TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."   47 U.S.C. § 227(b)(1)(A)(iii).   A person may bring a private cause of action to enjoin violations of the TCPA.   *Id.* § 227(b)(3)(A).   To establish a claim under the TCPA for calls made to a cellular phone, a plaintiff must prove that:   "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012). "The TCPA is essentially a strict liability statute that does not require any intent except when awarding treble damages."   *Harrington v. RoundPoint Mortg. Servicing Corp.*, 163 F. Supp. 3d 1240, 1243 (M.D. Fla. 2016) (citations omitted).

In Counts 1-5 of the Third Amended Complaint, Plaintiff alleges that Defendants violated the TCPA and/or 47 C.F.R. § 64.1200 by calling his number

without prior express consent, without honoring the National Do Not Call Registry, by failing to provide full Caller ID information, by failing to identify as a telemarketer and provide a telephone number, and for failure to provide a written do not call policy upon demand.   Doc. No. 47, ¶¶ 74-80.   And in Counts 11-13 Plaintiff alleges that Defendants violated the TCPA and 47 C.F.R. § 64.1200(b) by failing to provide an automated interactive voice opt out mechanism, and by failing to clearly state the identity and/or telephone number of the business/individual/entity responsible for initiating the calls.   *Id.*, ¶¶ 86-88.[6]   All of Plaintiff's TCPA claims share one common and fundamental issue – in order to prevail, Plaintiff must establish that Defendants can be held directly or vicariously liable for any of the calls at issue.   *See, e.g.*, *Worsham v. Discount Power, Inc.*, Civil Action No. RDB-20-0008, 2022 WL 3100762, at *4 (D. Md. Aug. 4, 2022).   Based on the undisputed evidence before the Court, Plaintiff has failed.

     1.    *No Direct Liability*

In two declaratory rulings, the Federal Communications Commission ("FCC") defined the contours of how a person or entity can be held liable for

---

[6] The remaining counts in the Third Amended Complaint were brought under either the MD TCPA or the FTC Telemarketing Sales Rule (Counts 6-13, 14-22).   Doc. No. 47.   These claims were not revived when Plaintiff's case was reopened following completing of Defendants' bankruptcy proceedings.   Doc. No. 166.

violations of the TCPA.   First, in *In re Joint Petition Field by DISH Network LLC*, 28 FCC Rcd. 6574 (2013), the FCC explained that "a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."   *Id.* at 6582.   The FCC further explained that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call."   *Id.* at 6583.   *See also Shamblin v. Obama for America*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1754628, at *5 (M.D. Fla. Apr. 17, 2015).[7]

Second, in *In re Dialing Services, LLC*, 29 FCC Rcd. 5537 (2014), the FCC determined that the following conduct was evidence that Dialing Services "initiated" illegal robocalls to cellphones under the TCPA: (1) providing a software platform for making robocalls; (2) leasing or otherwise securing telephone connections for making robocalls; (3) purchasing voter lists; (4) providing technical support; (5) reviewing and/or editing messages; (6) reviewing phone numbers to determine if they are valid; (7) transmitting the calling party's number to be displayed by the call recipient's caller identification services; (8) storing the prerecorded message on a server; (9) playing a recorded message to a called party;

---

[7] The Eleventh Circuit has noted that FCC regulations providing for vicarious liability under the TCPA have "the force of law," and cannot be disregarded by the courts. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014).

(10) detecting whether a call is answered by a live person or by an answering machine; (11) providing reports of call history, results, and polling; and (12) dialing telephone numbers. 29 FCC Rcd. at 5543-44. The FCC commented that these activities were "plainly within the understanding of 'making' or 'initiating' a call under the *DISH Network* standard."   *Id.* at 5544–45.

The evidence before the Court – Plaintiff's July 19, 2022 Affidavit and the Electronic Articles of Incorporation – does not establish that either Taveras or TSS engaged in any of the above listed activities.   At most, Plaintiff's Affidavit demonstrates that on three occasions, the person Plaintiff spoke to during the unsolicited calls stated that he worked for TSS.   Worsham Aff., ¶¶ 16, 39.   This is simply not enough.   First, these representations in Plaintiff's Affidavit constitute inadmissible hearsay, as they are being submitted for the truth of the matter asserted – that the persons making the unsolicited robocalls work for TSS and that TSS made the calls.   *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment" (footnote, citation, and quotations omitted)); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").   Second, other than his own representations of these phone

- 14 -

conversations, Plaintiff has presented no evidence that these persons actually worked for TSS.   Third, there is no evidence that Plaintiff ever attempted to call the 407-986-5439 callback number so there is no evidence that the number has any connection to Defendants.   These deficiencies were previously explained to Plaintiff, yet he has provided no additional evidence to correct them.   *See* Doc. No. 148, at 9.   As such, Plaintiff has not established that either Defendant ever initiated any of the calls in question.   *See, e.g., Grant v. Regal Auto. Grp., Inc.*, No. 8:19-cv-363-T-23JSS, 2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020), *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (finding no direct liability for TCPA violations because there was no evidence or argument presented that the defendant initiated the calls); *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014) ("[B]ecause GEICO did not make or initiate any of the calls at issue in this action, there can be no direct liability against GEICO under the TCPA.").

2.   *No Vicarious Liability*

But the FCC has also explained that a person or entity can be held vicariously liable for TCPA violations under federal common law principles of agency. Specifically:

> the seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers.   In this regard, we explain below that a seller may be

> liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. . . .  While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA.").

*DISH Network*, 28 FCC Rcd. at 6584, 6587.

Since the FCC's ruling, numerous courts have held that, under federal common law principles of agency, a party may be vicariously liable for TCPA violations even if that party did not initiate or make the calls at issue.  *See, e.g.*, *Grant*, 2020 WL 8254283, at *7, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020); *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d 1302, 1309 (S.D. Fla. 2016); *Harrington*, 163 F. Supp. 3d at 1244-45; *Shamblin*, 2015 WL 1754628, at *6; *Cabrera*, 452 F. Supp. 3d at 1316; *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1377-78 (S.D. Fla. 2014).  *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations.") (citing *DISH Network*, 28 FCC Rcd. 6574)).

When finding the existence of vicarious liability, the Court must determine "whether the principal had the necessary agency relationship with the direct wrongdoer."  *Legg*, 20 F. Supp. 3d at 1377 (citing *Commodity Futures Trading*

*Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009)).   "The Court may find that a necessary agency relationship exists on common law agency principles such as actual authority, apparent authority, and ratification."   *Grant*, 2020 WL 8254283, at *7, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (citing *Shamblin*, 2015 WL 1754628, at *6).

The Eleventh Circuit has explained that an actual agency relationship requires "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent."   *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236 (11th Cir. 2014) (citation omitted).   The Court considers several factors, including: "(1) direct evidence of the principal's right to or actual exercise of control; (2) the method of payment for an agent's services, whether by time or by the job; (3) whether or not the equipment necessary to perform the work is furnished by the principal; and (4) whether the principal had the right to fire the agent."   *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 797 (11th Cir. 2017) (quoting *Franza*, 772 F.3d at 1236–37).[8]   In the TCPA context, courts have characterized the control necessary to establish agency as being control over "the manner and means" of the agent's

---

[8] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

calling activities.   *Grant*, 2020 WL 8254283, at *8, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (citing *Lushe v. Verengo Inc.*, No. CV13-07632 AB (RZ), 2014 WL 5794627, at *4 (C.D. Cal. Oct. 22, 2014)).

"To establish the existence of apparent authority, a party must prove:   (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by a third party in reliance upon such a relationship."   *Grant*, 2020 WL 8254283, at *10, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011)).   The agent cannot create apparent authority, only the actions or representations of the principal can create apparent authority.   *Id.   See also Thomas v. Taco bell Corp.*, 582 F. App'x 678, 679 (11th Cir. 2014) (analyzing apparent authority under the TCPA, which "can only be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied." (alterations in original)).   Examples of conduct by the principal that can create apparent authority include: "(1) allowing access to 'information and systems that normally would be within the seller's exclusive control;' (2) providing access to customer information; (3) allowing the third party to 'enter consumer information into the seller's sales or customer systems;' (3) approving a telemarketing script; or (4) knowing of TCPA

violations and failing to stop such violations." *Shamblin*, 2015 WL 1754628, at *6 (quoting *DISH Network*, 28 FCC Rcd., at 6593-94).

And to establish vicarious liability under a theory of ratification, a plaintiff need not prove the existence of an agency relationship, but instead must demonstrate "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Grant*, 2020 WL 8254283, at *10, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (citing The Restatement (Third) of Agency § 4.01(1)).   A party can ratify an action "by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." *Id.*

Here, Plaintiff's Affidavit is insufficient to establish any of these theories of agency.   The Affidavit makes conclusory averments that Defendants used a call center in Karachi, Pakistan run by a Murtaza Hussain, doing business as OneTen Communication.   Worsham Aff., ¶¶ 17, 51.   Plaintiff provides no evidence to support these conclusory and speculative assertions.   *See Wiggins v. FDIC*, No. 2:12-cv-02705-SGC, 2019 WL 4750076, at *5 (N.D. Ala. Sept. 30, 2019) ("[S]peculation and conclusory statements in an affidavit are inadmissible." (citing *Reliance Nat. Indem. Co. v. Pinnacle Cas. Assur. Corp.*, 160 F. Supp. 2d 1327, 1332 (M.D. Ala. 2001), and *Ojeda v. Louisville Ladder, Inc.*, 410 F. App'x 213, 215 (11th Cir. 2010))).   The Affidavit further makes reference to three payments in 2018 and 2019 for an account that

names Murtaza Hussain as the subscriber for three phone numbers, one of which appears to be the callback number provided to Plaintiff during one of the June 7, 2018 calls.   Worsham Aff., ¶ 54.[9]   Again, Plaintiff has attached no evidence to his renewed motion to support this conclusory assertion.   But even if he did, these payments wholly fail to show that Defendants exercised any control over either Murtaza Hussain or OneTen Communication with respect to the making of the phone calls at issue, does not show that Defendants provided any equipment to either Murtaza Hussain or OneTen Communication to make the phone calls at issue, and there is no evidence of any contractual relationships between these entities, such that any actual agency authority exists.

Plaintiff's assertions that during a few of the calls, the salesperson said they were working for TSS and, in one instance, provided a callback number tied to Murtaza Hussain also do not establish an agency relationship.   Plaintiff has provided no evidence to suggest that these salespersons were authorized by Defendants to act as their agents.   *See Worsham v. Direct Energy Servs., LLC*, No. CV SAG-20-00193, 2021 WL 948819, at *6 (D. Md. Mar. 12, 2021), *motion for relief from judgment denied*, 2021 WL 2451641 (D. Md. May 12, 2021), *and aff'd*, 2022 WL 1261998

---

[9] Plaintiff's affidavit appears to include a scrivener's error, as the number is listed as "(407) 986-539."   Worsham Aff., ¶ 54.

(4th Cir. Apr. 28, 2022) ("[T]he fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient to hold the moving defendants in this case liable . . . the mere fact that a dealer uses a supplier's name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery which they advertise." (quoting *In re: Monitronics International, Inc.*, 223 F. Supp. 3d 514, 527-28 (N.D. W.Va. 2016))).

Nor does Plaintiff's Affidavit support a theory of liability based on apparent authority, as Plaintiff has not identified any representations, manifestations, or actions taken by Defendants (as opposed to by any third parties) upon which Plaintiff relied.   There is no evidence that Defendants allowed access to information and systems exclusively within their control, provided access to customer information, approved any telemarketing scripts, or knew of any TCPA violations and failed to take actions to stop them.   *See Shamblin*, 2015 WL 1754628, at *6.   Plaintiff's Affidavit does not identify – other than via pure speculation – any entity that made the unsolicited calls to his cellular telephone number.   Worsham Aff., ¶¶ 9, 16-17, 51-52.   Taking the most liberal construction possible, Plaintiff's Affidavit appears to point the finger at Murtaza Hussain and OneTen Communication as the entities engaging in the alleged TCPA violations, but the actions of these entities, without more, cannot establish Defendants' liability under

an apparent authority theory.  *See Grant*, 2020 WL 8254283, at *10, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (granting summary judgment in defendant's favor in TCPA action under an apparent authority theory where plaintiff offered no facts to demonstrate that the defendant took any actions, the statements at issue were made by the purported agents).   And the purported payments by Taveras to an account that subscribes to a callback number once provided to Plaintiff does not establish that Defendants made any representations sufficient to support an apparent authority theory.  *See* Worsham Aff., ¶ 54.

And finally, Plaintiff's Affidavit does not establish vicarious liability under a ratification theory.   Other than the speculative averments previously identified, there is nothing in Plaintiff's Affidavit establishing that Defendants were aware that anyone, in particular Murtaza Hussain or OneTen Communication, was engaging in unsolicited robocalls for Defendants' benefit, that these entities were acting on Defendants' behalf, or that Defendants knew of either Murtaza Hussain's or OneTen Communication's alleged actions.  *See Direct Energy Services, LLC*, 2021 WL 948819, at *5 (rejecting ratification theory of vicarious liability in TCPA action brought by Plaintiff because "Worsham has adduced no evidence that Direct Energy knew or reasonably should have that any telemarketer was violating the TCPA on its behalf.   There is no suggestion that Worsham advised Direct Energy

of these calls prior to filing his lawsuit, to permit Direct Energy an opportunity to try and prevent them.   Additionally, Worsham's inability to identify the caller makes proof of ratification impossible.   Based on the very limited evidentiary record before this Court, these calls may not even have derived from a 'third-party telemarketer that is otherwise authorized to market' on Direct Energy's behalf."); *Grant*, 2020 WL 8254283, at *10-11, *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020) (finding factual issues where evidence was submitted that defendant was aware that a third party was engaging in a telemarketing campaign using a prerecorded voice message for defendant's benefit, obtained a benefit from the telemarketing campaign, and failed to investigate the campaign any further); *Strauss*, 173 F. Supp. 3d at 1310 (finding no vicarious liability in TCPA action where principal gave debt collector limited information about the debt to begin the collection process, but there was no evidence suggesting that the principal gave the debt collector access to its system, authorized it to use the principals' name or marks, or knew that it was violating the TCPA and failed to stop it); *Cabrera*, 452 F. Supp. 3d at 1320-21 (rejecting ratification theory of agency/vicarious liability for TCPA claims where plaintiff failed to demonstrate that defendant had "full knowledge of the facts and circumstances of the unauthorized acts," and evidence established that defendant did not specifically know what actions the debt collector took to recover funds).   Thus, based on the

evidence attached to Plaintiff's renewed motion for summary judgment, his motion is due to be denied for failure to demonstrate either direct or vicarious liability.[10]

### 3. *No Individual Corporate Officer Liability*

Alternatively, to the extent Plaintiff is pursuing injunctive relief against Taveras in his individual capacity as managing member of TSS, Plaintiff's motion also fails. "[B]efore corporate officers may be held personally liable under the TCPA, they must have had direct, personal participation in the conduct that violated the TCPA or knowingly authorized such conduct." *Shelton v. CSG Sols. Consulting LLC*, No. 6:18-cv1335-Orl-41KRS, 2019 WL 11504659, at *1 (M.D. Fla. Feb. 5, 2019). *See also Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015) (same). While Plaintiff has established that Taveras was the managing member of TSS, *see* Doc. No. 221-2, he has not submitted any evidence that Taveras had any direct, personal participation in any of the unsolicited robocalls at issue in this case. As previously discussed, the lone averment in Plaintiff's Affidavit that Taveras made three payments to Murtaza Hussain is both speculative and insufficient, and does not explain how Taveras had any direct, personal participation in the making of the

---

[10] The only other evidence Plaintiff submitted with his renewed motion consists of the articles of incorporation for TSS, which do not support any finding of vicarious liability. Doc. No. 221-2.

- 24 -

phone calls to Plaintiff.   *See Fischer v. Trivita, Inc.*, No. 6:19-cv-2333-Orl-41EJK, 2020 WL 13349091, at *5 (M.D. Fla. July 30, 2020) (allegations that corporate officer personally controlled the content of the prerecorded sales calls, determined who to call, and personally directed the calls to plaintiff "involve the kind of direct, personal involvement" sufficient to state a claim of individual liability under the TCPA against corporate officer (citations omitted)); *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, at *4 (S.D. Fla. Mar. 27, 2013) (granting summary judgment in favor of individual corporate officer defendant due to a lack of evidence that the individual defendant "had anything personally to do with the calls made" to plaintiff, or that he "authorized or personally engaged in conduct that clearly violated the TCPA").   *Cf. Neurocare Inst. of Cent. Fla., P.A. v. US Cap. Access, Inc.*, No. 6:13-cv-1233-Orl-31DAB, 2014 WL 12873038, at *4 (M.D. Fla. May 14, 2014), *report and recommendation adopted*, 2014 WL 12873040 (M.D. Fla. May 30, 2014) (granting default judgment against individual corporate officer in TCPA case where individual's name was listed as the sender of the Junk Fax, and he admitted to plaintiff's counsel that he authorized the sending of the fax).   So, Plaintiff's request for summary judgment as to Taveras in his individual capacity is also denied.

4.      *The Nondelegation Doctrine*

Plaintiff's argument that he need not establish any sort of agency relationship based on the doctrine of nondelegation is unpersuasive.   Doc. No. 228, at 7-12. First, Plaintiff cites to no cases establishing a non-delegable duty to comply with the TCPA.   Second, to accept Plaintiff's argument would be to negate the FCC declaratory rulings and the wealth of case law discussed above, all of which have held that traditional federal common law agency principles apply to establish vicarious liability in TCPA claims.   Third, Plaintiff has raised this exact argument in several other courts, with no success, and the same result applies here.   *See Direct Energy Servs.*, 2021 WL 948819, at *5 (rejecting nondelegation doctrine argument based on lack of authority in support, and finding the nondelegation doctrine inapplicable to the TCPA, "since it would impose strict liability thus making such vicarious liability analyses unnecessary."); *Worsham v. Disc. Power, Inc.*, No. CV RDB-20-0008, 2022 WL 3100762, at *6 (D. Md. Aug. 4, 2022), *aff'd*, 2023 WL 2570961 (4th Cir. Mar. 20, 2023) ("The FCC and the Fourth Circuit have recognized that vicarious liability under the TCPA is governed by the federal common law of agency.   Additionally, district courts evaluating the TCPA have routinely rejected the assertion that TCPA duties are non-delegable.   Worsham fails to cite any cases reaching a contrary conclusion." (citations and quotations omitted)).   *See also Armstrong v. Investor's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2020 WL

2041935, at *12 (C.D. Cal. Mar. 6, 2020) ("Plaintiff has failed to identify any cases stating that a defendant could be held liable for a third-party's violation of TCPA under the non-delegation doctrine."); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 772 (N.D. Ill. 2014) ("Nothing in the TCPA supports imposing liability for third-party telemarketing calls under such a broad [non-delegation] theory . . . .").

For these reasons, Plaintiff's motion for summary judgment is due to be denied.

C.     *The Previously Filed Evidence*

Even if Plaintiff has presented legal authority to support his incorporation of previously filed materials, and even if the Court were persuaded to ignore the clear directives of the June 28, 2022 Order, Plaintiff still would not prevail.   Plaintiff seeks to incorporate 17 exhibits that were attached to his July 20, 2019 motion for a preliminary injunction.   Doc. No. 221, at 4 (citing Doc. Nos. 95-2 through 95-18). But as then-Presiding United States District Judge Roy B. Dalton held, these exhibits do not establish that Defendants made any of the calls to Plaintiff's cellular phone number that form the basis of this case.   *See* Doc. No. 148, at 8-9.   The exhibits consist of the following:

- Defendant's Fed. R. Civ. P. 26 initial disclosures, which identify Taveras and his brother, Marcos M. Taveras, as persons with knowledge of TSS's corporate structure; identify Murtaza Hussain

from OneTen Communication as a person who may have information about the phone calls made to Plaintiff; identify three companies that have knowledge of Defendants' phone records; and identify phone records and corporate structure documents as information that may be relevant to this case.   (Doc. Nos. 95-2, 95-3).

- Certified phone records from Verizon showing that a 410-557-7890 phone number called Plaintiff's cellular phone number on 85 occasions between March 28, 2018 and January 29, 2019.   (Doc. Nos. 95-4 through 95-6).

- The Affidavit of Rommel T. Crabtree, an IT services consultant, who was retained to sort through the Verizon phone records and isolated the calls made to Plaintiff's cellular phone number from the 410-557-7890 number.   (Doc. No. 95-7).

- The Affidavit of Sharad Kumar, the custodian of records for Telynyx, LLC, in which he avers that Murtaza Hussain subscribes to three phone numbers:   407-986-5439, 888-579-9909, and 888-248-7729.   Mr. Kumar further avers that Taveras made three PayPal payments to "this account" on October 26, 2018 ($250.00), January 29, 2019 ($50.04), and February 15, 2019 ($50.06).   (Doc. No. 95-8).

- A response to Plaintiff's subpoena to US Bank, which states that US Bank has not had any contracts or communications with TSS, or any complaints regarding TSS; that an online credit card application was made in Plaintiff's name on June 7, 2018 using IP address 45.55.49.75; and provides copies of correspondence between US Bank and Plaintiff. (Doc. No. 95-9).

- Plaintiff's Affidavit (Doc. No. 95-10), an updated version of which is attached to the renewed motion for summary judgment.   (Doc. No. 221-1).

- Another list detailing the phone calls to Plaintiff's cellular number, the origins of which is unknown, although it is identical to the call list included in the Third Amended Complaint (Doc. No. 47, at 3-5).   (Doc. No. 95-11).

- A copy of an email from Taveras to Plaintiff using email address marcosi8211@icloud.com, in which Taveras denies making any of the calls at issue.   (Doc. No. 95-12).

- A screenshot of Taveras' Twitter page, showing a username of @marcosi8211, dated July 19, 2019.   (Doc. No. 95-13).

- Plaintiff's first set of Requests for Admission to Defendants, which Defendants did not respond to.   (Doc. Nos. 95-14, 95-15).

- A screenshot from an "Artificial Intelligence Dialer IVR" Developer Forum website, in which a "Kevin Reed" is asking for help in developing an AI Dialer IVR, and lists a oneten.com@gmail.com email address.   (Doc. No. 95-16).

- Another screenshot from this same website, which appears to show that "Kevin Reed" is really Murtaza Hussain.   (Doc. No. 95-17).

- A copy of what appears to be an employment advertisement for OneTen Communication, listing an email address of oneten.hr@gmail.com.   (Doc. No. 95-18).

While these exhibits further establish that Plaintiff received these unwanted calls, and that many were made using a prerecorded or artificial voice, they simply do not establish that Defendants made the calls – either directly or through another party.   As Judge Dalton noted, the only link between the robocalls and TSS is Plaintiff's own assertions that during one of the June 7, 2018 calls and two June 3, 2019 calls, a salesperson stated that he worked for TSS.   Doc. No. 148, at 8.   *See also* Doc. No. 95-10, ¶¶ 16, 39; Doc. No. 221-1, ¶¶ 16, 39.   And the only link between Taveras and the calls is the Telnyx records, which simply show that Taveras made three payments to an account associated with a callback number.   Doc. No. 148, at

8.   *See also* Doc. No. 95-8.   Notably, Plaintiff has not presented any evidence that he ever tried to call the 407-986-5439 callback number to confirm that it was tied to Defendants, nor has he presented any evidence concerning the identity of the subscriber(s) to the phone numbers that actually called him (410-557-7890, 888-778-5736, or 800-847-2911), or the identity of the owner and/or user of the IP address associated with the June 7, 2018 credit card application.   *See* Doc. No. 95-9.   Simply put, none of this information establishes that Defendants either initiated the calls at issue themselves, or that the calls were made by a third party for which Defendants can be held vicariously liable under any agency theory.   Plaintiff has been aware since September 18, 2019 that this "scant evidence" was insufficient, but he has not provided anything more beyond his own speculation.   *See* Doc. No. 148, at 8.[11]

Plaintiff also points to the February 15, 2019 Requests for Admission ("RFAs") he served on Taveras and TSS, to which neither Defendant timely responded.   Doc. No. 221, at 4, 7, 10-11, 20-21; *see also* Doc. Nos. 95-14, 95-15. However, on September 6, 2019, the Court granted Defendant's motion for relief from these RFAs and permitted Defendants to serve belated responses to same.

---

[11] Several of the exhibits are unauthenticated screenshots which also contain inadmissible hearsay, as it appears they are being submitted for the truth of the matter asserted – that Murtaza Husain and OneTen Communication were using automated and/or artificial dialer systems.  *See* Doc. No. 221, at 22; Doc. Nos. 95-16, 95-17.  The Court has not considered such inadmissible evidence.

Doc. No. 138.    Thus, the RFAs Plaintiff relies upon are no longer valid. Defendants timely served their new responses to the RFAs on Plaintiff on September 10, 2019, *see* Doc. Nos. 142-43, and Plaintiff has not submitted these new responses.    Thus, the Court has not considered the no-longer-valid RFAs that Plaintiff attempted to incorporate herein.[12]

Last, Plaintiff seeks to incorporate into his renewed motion for summary judgment supplemental RFAs that were served on Defendants on October 8, 2021 and October 30, 2021, to which Defendants again did not respond.    Doc. No. 221, at 23-26; *see also* Doc. Nos. 198-1 through 198-4.    These supplemental RFAs were originally attached to Plaintiff's first summary judgment motion.    Doc. No. 198. Because Defendants did not respond or note any objections to the RFAs, they are all deemed admitted.    *See* Fed. R. Civ. P. 36(a)(3).    However, even if the Court were to consider these improperly incorporated supplemental RFAs, they are again insufficient (whether viewed separately or in conjunction with all other evidence) to establish that either Defendant initiated any of the calls in question or could be held vicariously liable for the calls to the extent they were made by Murtaza Hussain and/or OneTen Communication.    Nor do they establish that Taveras

_____

[12] Plaintiff's reliance upon invalid RFA responses further supports the Court's prior ruling precluding Plaintiff from incorporating previously filed documents in the present motion.

directly or personally participated in the making of the calls, or knowingly authorized anyone to make the calls at issue in this case.

With respect to TSS, the supplemental RFAs admit that "other persons or entities" used the TSS name for telemarketing calls, including calls to Plaintiff's cellular number; that OneTen Communication used the TSS name for telemarketing calls; that TSS communicated with Murtaza Hussain and/or OneTen Communication; that OneTen Communication obtained customers for TSS and that TSS depended primarily on OneTen Communication to obtain customers; and that TSS business records have been lost or destroyed.   Doc. No. 198-1.   The supplemental RFAs further admit that TSS conducted business with OneTen Communication and Murtaza Hussain, and that TSS was "aware" that OneTen Communication and Murtaza Hussain were obtaining customers through telemarketing and by using prerecorded voice messages.   Doc. No. 198-3.   With respect to Taveras, the supplemental RFAs admit that he has communicated with OneTen Communication and Murtaza Hussain and that Taveras was "generally aware of what Murtaza Hussain [and/or OneTen Communication] did for or on behalf of" TSS.   Doc. No. 198-2.   The supplemental RFAs further admit that Taveras conducted business on behalf of TSS with Murtaza Hussain and OneTen Communication, was aware that Murtaza Hussain and OneTen Communication obtained customers for TSS through telemarketing and using prerecorded voice

messages, and that Murtaza Hussain and OneTen Communication were obtaining customers for TSS by calling numbers on the Do Not Call Registry.   Doc. No. 198-4.   But these RFAs all speak in broad, general terms, they nowhere tie TSS or Taveras to the specific facts of this case and the specific calls to Plaintiff, nor does the general phrase "conducting business" establish that Defendants had any control over Murtaza Hussain or OneTen Communication, made any representations or took actions such that an apparent authority agency theory would govern, or had any knowledge that these third-parties were violating the TCPA with respect to Plaintiff and failed to take any action.

At the end of the day, if the Court were to consider these improperly incorporated supplemental RFAs along with the other improperly incorporated evidence and Plaintiff's updated affidavit, what Plaintiff has established (excluding inadmissible hearsay and Plaintiff's speculation) is that:  (1) he received close to 100 unsolicited calls to his cellular number; (2) that Murtaza Hussain and/or OneTen Communication conducted business with Defendants; (3) that Murtaza Hussain and/or OneTen Communication obtained customers for TSS by using prerecorded voice messages and telemarketing; (4) that some of the customers were on the national Do Not Call Registry; (5) that Defendants were generally aware of the actions of Murtaza Hussain and OneTen Communication; and (6) that Taveras made three payments to an account that subscribed to a callback number provided

to Plaintiff during one of his calls.   *See generally* Worsham Aff., Doc. Nos. 95-5, 95-6, 95-8, 95-11; 198-1, 198-2, 198-3, 198-4.

But what Plaintiff has continuously failed to prove is that Defendants – either directly or through Murtaza Hussain or OneTen Communication – ever initiated any of the calls at issue in this case.   To put a finer point on it – Plaintiff has not presented any evidence tying the phone numbers (410-557-7890, 888-778-5736, or 800-847-2911) to TSS, Taveras, Murtaza Hussain, or OneTen Communication, and he has not established that the callback number from the June 7, 2018 call has any relation to Defendants.   Plaintiff speculates that the numbers that called him are "spoof" numbers that cannot be traced, but presents nothing beyond his own opinion in support.   *See* Doc. No. 221, at 5-6, 13, 15; Worsham Aff., ¶¶ 10-15, 51-52, 55.[13]   And he has presented no evidence or legal authority suggesting that the one callback number from a single June 7, 2018 phone call – for which the only "evidence" tying the number to Defendants is Plaintiff's own representations – is sufficient to establish liability for the TCPA violations alleged in his Third Amended Complaint.

---

[13] Plaintiff is able to provide subscriber information for the one callback number, but has not submitted any subscriber information for the "spoof" numbers, nor any expert testimony or other evidence as to why such subscriber information is not obtainable.

The evidence also does not establish that Defendants had a degree of control over either Murtaza Hussain or OneTen Communication for an actual agency relationship, does not establish any affirmative actions on the part of TSS or Taveras to support an apparent agency theory, and does not show that Defendants ratified Murtaza Hussain's or OneTen Communication conduct with respect to the calls at issue in this case. *See Disc. Power, Inc.*, 2022 WL 3100762, at *8 (rejecting Plaintiff's agency theories of liability in virtually identical TCPA claims where Plaintiff "fail[ed] entirely to identify the who actually initiated the seven telemarketing calls at issue, and he offer[ed] no evidence that Discount Power ratified the calls through knowledge and inaction.   Worsham asserts in his affidavit that 'Joselyn' stated that she was calling on Discount Power's behalf and eventually offered Discount Power's public-facing customer service number.   This evidence is insufficient to sustain Worsham's claims under any applicable agency theory, as it is the <u>principal's</u> manifestations, not the <u>agent's</u>, that are determinative under agency law." (citations and quotations omitted)); *Direct Energy Services, LLC*, 2021 WL 948819, at *5 (Plaintiff's inability to identify the caller for the calls at issue "makes proof of ratification impossible."); *Cabrera*, 452 F. Supp. 3d at 1318, 1320 (rejecting actual agency theory because "[a]gency requires more than passive awareness or permission; the fact that GEICO knew or assumed that Bell was placing calls or sending letters as part of its recoupment efforts does not demonstrate that GEICO

- 35 -

had any control over those methods," and rejecting ratification theory where plaintiff failed to demonstrate that defendant had "full knowledge of the facts and circumstances of the unauthorized acts").[14]   This evidence also is not sufficient to show the types of direct, personal involvement necessary to find Taveras individually liable.[15]   Thus, even if the Court were to consider all of the evidence Plaintiff improperly references in his renewed summary judgment motion, the motion would still be denied.

## IV.        FEDERAL RULE OF CIVIL PROCEDURE 56(F)

Federal Rule of Civil Procedure 56(f) authorizes the Court, after giving notice and a reasonable time to respond, to grant summary judgment for a non-movant. Fed. R. Civ. P. 56(f)(1).   The Eleventh Circuit has held that when "a legal issue has been fully developed[ ] and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided."   *Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201-02 (11th Cir. 2003) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999).   *See also Lance Toland v.*

---

[14]   In the event Plaintiff points to the December 10, 2018 email from Taveras as proof that he was aware of the offending phone calls and failed to take action to stop them, as Plaintiff himself acknowledges, the email is hearsay and therefore inadmissible evidence for anything other than establishing Taveras' email address.   Doc. No. 95-12, *see* Doc. No. 228, at 13-14.

[15]   Notably, Plaintiff does not cite to a single case where direct or vicarious liability under the TCPA has been found under similar facts.   *See* Doc. No. 221.

*Phoenix Ins. Co.*, 855 F. App'x 474, 481 (11th Cir. 2021)l; *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 796 (1999) ("Summary judgment for a defendant is appropriate when a plaintiff fails to make a sufficient showing to establish the existence of an essential element on which she has the burden of proof at trial." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

Here, it is clear that the evidentiary record is complete, *see* Doc. No. 221, at 4, Plaintiff has been afforded ample opportunity to submit any and all evidence he wishes the Court to consider, and he was provided two chances to establish his entitlement to summary judgment.   *See* Doc. Nos. 198, 220, 221.   The Court also provided Plaintiff with prior notice of the deficiencies in his claims, and the issue of direct and vicarious liability was raised by Defendants in their opposition brief, to which Plaintiff was given leave to reply.   *See* Doc. Nos. 148, 220, 224, 228.   Thus, the Court would be well within its authority to *sua sponte* enter summary judgment in favor of Defendants based on Plaintiff's failure to establish that Defendants are directly or vicariously liable for the calls at issue.   *See Artistic Ent., Inc.*, 331 F.3d at 1202 (affirming *sua sponte* grant of summary judgment where district court did not formally notify the parties that it was considering doing so, because the merits of the claims had been fully briefed, evidence was accepted, and the parties were aware that the district court might rule on the claims); *Storm Damage Sols., LLC v. Indian Harbor Ins. Co.*, No. 3:21-cv-901-TKW-HTC, 2022 WL 18932730 (N.D. Fla.

Sept. 27, 2022) (granting summary judgment under Rule 56(f), finding that notice and opportunity to be heard were given when non-movant raised issue in opposition brief to original summary judgment motion).   *See also Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 (11th Cir. 1995) ("Because [the plaintiff] has not been deprived of the opportunity to present facts or arguments which would have precluded summary judgment in this case, any violation of the . . . notice rule is harmless.").

However, out of an abundance of caution, the Court will afford Plaintiff an opportunity to submit argument to the Court as to why summary judgment should not be entered in favor of Defendants as to all claims, based on Plaintiff's failure to establish either direct or vicarious liability.   *See, e.g., First Mercury Ins. Co. v. First Fla. Bldg. Corp.*, No. 8:20-cv-1929-CEH-MRM, 2023 WL 23116 (M.D. Fla. Jan. 3, 2023) (granting summary judgment in favor of non-movant under Rule 56(f), but only after providing movant an opportunity to show cause why summary judgment should not be granted); *Blanco v. Samuel*, No. 21-24023-CIV, 2022 WL 5241893 (S.D. Fla. Oct. 6, 2022) (holding oral argument "[i]n an abundance of caution" prior to granting summary judgment under Rule 56(f), even though evidentiary record was complete); *Reillo v. Alternate Health USA, Inc.*, No. 3:19-cv-109-J-34JBT, 2020 WL 6701625 (M.D. Fla. Nov. 13, 2020) (granting summary judgment under Rule 56(f) after notice and hearing oral argument from the parties, where plaintiff could not

establish any of her claims as a matter of law).   *See also Cabrera*, 452 F. Supp. 3d at 1317 ("When a party bearing the burden of proving agency fails to produce evidence in support of its allegations or where the evidence presented is so unequivocal that reasonable persons could reach but one conclusion, a court may determine the lack of agency as a matter of law."); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) ("Agency is a notoriously fact-bound question, but summary judgment on the existence of an agency relationship is still appropriate when the plaintiff fails 'to meet her burden in presenting sufficient facts to show that a genuine issue of material fact exists with respect to the agency issue.'").

## V.     CONCLUSION

Accordingly, Plaintiff's Motion for a Summary Judgment Under Rule 56 (Doc. No. 221) is **DENIED.**   Within **twenty-one (21) days** from the date of this Order, Plaintiff shall **SHOW CAUSE** in writing why summary judgment should not be entered in favor of Defendants based on an inability to establish as a matter of law that Defendants are directly or vicariously liable for the calls in question, and/or that Defendant Marcos I. Taveras can be held individually liable for the

TCPA violations that remain at issue.   Plaintiff's response shall not exceed **twenty (20) pages**, and is limited to legal argument only.[16]

　　　　**DONE** and **ORDERED** in Orlando, Florida on March 28, 2023.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[16] Because the issue of summary judgment remains pending, the Court defers ruling on Defendants' counsel's motion to withdraw.   Doc. No. 229; *see also* Doc. No. 230.